IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NUMBER: 25-mj-7144-MAB |
| ) | |
| SHENGHAN JIN, ) | |
| ) | |
| Defendants. ) | |

**CRIMINAL COMPLAINT**

I, Sandra L. Lane, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**COUNT 1**
**WIRE FRAUD – 18 U.S.C. § 1343**

On or about July 16, 2025, in St. Clair County, Illinois, within the Southern District of Illinois,

**SHENGHAN JIN**

defendant herein, knowingly devised and participated in a scheme to defraud J.B., and to obtain money and property belonging to J.B. by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme to defraud, and attempting to do so, knowingly did cause to be transmitted by means of a wire communication in interstate or foreign commerce from somewhere outside of the state of Illinois to Illinois, certain signals, namely a WhatsApp text message to victim J.B. from an individual posing as a representative of HYCM Capital Markets customer support. In violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Section 1343.

**AFFIDAVIT**

I further state as follows:

1. I am a Senior Special Agent with the United States Secret Service (USSS), and I have 18 years' experience as a federal law enforcement officer. I am a graduate of the Federal Law Enforcement Training Center where I received classroom and practical training in criminal investigations. I am vested with the authority to investigate violations of federal criminal laws as an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, §2510(7). I have conducted and assisted with numerous criminal investigations concerning violations of federal and state laws. My current assignment is in the Southern District of Illinois where I investigate financial crimes, elder fraud, and other financial crimes. I have been conducting investigations involving foreign nationals and foreign criminal organizations targeting elderly victims across the United States through imposter or impersonation scams. Imposter scams involve fraudsters impersonating government officials, company representatives, or known and trusted people, to steal money and/or personal information from victims. These scams occur through various means, including phone calls, text messages, emails, and/or social media.

2. On June 11, 2025, J.B., a 67-year-old resident of Belleville, Illinois, contacted the Metropolitan Enforcement Group of Southwestern Illinois ("MEGSI") to report he had been the victim of a scam involving cryptocurrency and gold bars.

3. J.B. reported being the victim of an online investment scam between May 2024 and June 2025. In total, J.B. estimated he lost approximately $2.5M to the scam through cryptocurrency ($42K), wire transfers ($1.8M), and physical gold ($700k) transactions. J.B believed he was

participating in Contract for Difference (CFD) style of investing with gold through scam websites and accompanying scam mobile applications using the company name HYCM Capital Markets ("HYCM"). Under the directive from the subjects involved, J.B. conducted dozens of wire transfers to various entities believing he was funding his own investment portfolio.

4. On June 12, 2025, investigators with the Internal Revenue Service, Criminal Investigation (IRS-CI) met with J.B who explained the scam to them in more detail. J.B. advised he was a retired financial/loan officer who had spent a majority of his life investing.

5. J.B. advised that around May 2024, a woman by the name of Siqi Li-Riley (Li-Riley) reached out to J.B. through Facebook as they shared similar interests. J.B. was recently divorced at the time and was looking for a companionship. J.B. and Li-Riley began discussing personal topics and investment strategies. Eventually, they moved their conversations to WhatsApp where Li-Riley contacted J.B. from a U.S. Number 646-382-4850. J.B. stated he believed Li-Riley resided in Miami, FL.

6. I know that WhatsApp is headquartered in Menlo Park, California. Because of that, it is my understanding that any WhatsApp messages travel through interstate commerce and would have been transmitted outside of the state of Illinois.

7. Prior to engaging in the investment scheme introduced by Li-Riley, J.B.'s investment portfolio at Fidelity Investments was valued at approximately $3.4 million dollars.

8. When talking to Li-Riley, J.B. believed he was discussing international investment opportunities and (CFD) style of investing with gold. A CFD is a financial agreement where investors exchange the difference in values of an asset between when the contract opens and closes. CFD investors speculate on price movements without owning the underlying asset, allowing for

potential profits from both rising and falling markets. J.B. understood that the Securities and Exchange Commission (SEC) typically restricted U.S. residents from participating in CFDs; however, he saw an opportunity for financial growth and wanted to grow his investment to pass it down to his grandchildren.

9. Li-Riley provided the initial guidance and instructions on setting up accounts with cryptocurrency exchange crypto.com, Wavegptexa mobile application and the fake HYCM brokerage through domain www.m.hycmmarkets.net. Li-Riley advised J.B. that Wavegptexa used HYCM as their brokerage firm to conduct transactions. J.B. was instructed to reach out to HYCM Support via WhatsApp on telephone number 213-721-4994 for coordinating transactions as he was making deposits.

10. J.B. started the supposed investments with a small cryptocurrency transaction per instructions by Li-Riley. Eventually Li-Riley introduced J.B. to her friend Katy who she told J.B. was a big investor in New York. J.B. reached out to Katy in July 2024 via WhatsApp at telephone number 646-382-4808. Katy later changed her telephone number to 646-281-6790 in April 2025.

11. In order to make investment payments, J.B. liquidated assists in his IRA accounts at Fidelity in the amount of approximately $1.9 million dollars and moved the funds to personal bank accounts at Together Credit Union, Catholic and Community Credit Union and Farmers and Merchants National Bank. J.B. told Li-Riley he did not feel comfortable conducting large transactions with cryptocurrency and requested he be allowed to make wire deposits directly from his bank accounts.

12. During this time, J.B. believed he was in contact with legitimate HYCM support staff through WhatsApp where he received instructions on where to direct the wire transfers for

his supposed investment accounts.

13. Between September 2024 and April 2025, J.B. completed multiple wire transfers through various banks in the total amount of $1,800,000. Each time, J.B. was given specific instructions about how to the wire money including account names and account routing instructions. The beneficiary names of the bank accounts given were: Zongheng Sihai Co Ltd, Baichuang Weixin Trading Co Ltd., Jiah Feng NY Inc, James Baker Group Limited, Erbosu Stationary Limited, Day to Day Supply, Solas Dental Limited, Tongle Wholesales Inc., and Cooplead LLC. A background check on these companies appear to show they are all fake companies that do not conduct regular business.

14. In February 2025, the HYCM WhatsApp account began instructing J.B. to purchase physical gold as part of his investment portfolio and prepare it for a courier that would pick up the gold at the victim's house. In total, three gold pickups were completed by a subject the victim knew only as "Leo." The gold pickups occurred in February, March and May 2025 and involved gold worth approximately $671k.

15. Specifically, on February 6, 2025, J.B. was instructed by HYCM customer support on WhatsApp to obtain gold in the amount of $211,658.10 to be picked up by an offline agent. On February 11, 2025, J.B. ordered gold from JM Bullion and advised HYCM customer support via WhatsApp that the order was placed. On February 17, 2025, HYCM customer support informed J.B. that its offline staff person was named "Leo" and his telephone number was (929) 717-924. HYCM advised J.B. that Leo would provide a dollar bill with serial number B59295943C as proof of identification. On February 18, 2025, an Asian male by the name of "Leo" arrived at J.B.'s residence with the dollar bill bearing serial number B592959d43C and picked up the gold.

16. On March 18, 2025, J.B was again instructed by HYCM customer support on WhatsApp to purchase gold in the amount of $255,616.38; however, due to the fluctuating price of gold, J.B. purchased $270,880.72 worth of gold bars. HYCM support chat advised J.B. that the same agent identified as "Leo" would pick up the gold and provided telephone number (347) 295-9339. They also provided a photo a dollar bill for verification with serial number J54548708B. On March 21, 2025, "Leo" arrived at the residence with a dollar bill bearing serial number J54548708B as a confirmation for the identification.

17. On May 10, 2025, J.B. was instructed by HYCM customer support on WhatsApp to complete another gold purchase in amount of $190,000 as quickly as possible to pay for a liquidity margin required for his funds to be released. On May 16, 2025, J.B. purchased physical gold from JM Bullion in amount of $210,893.13 and had it shipped to his residence. On May 19, 2025, J.B. notified HYCM customer service via WhatsApp that the order of gold has arrived and requested them to schedule the pick-up with their offline staff. J.B. was advised that their offline staff by the name of "Leo" with telephone number (347) 384-0597 would be picking up the gold and provided a photo of a dollar bill with serial number J39086491A. On May 20, 2025, "Leo" arrived at the residence with a dollar bill bearing serial number J39086491A for verification and picked up the gold.

18. J.B. stated that during these three gold pickups, the same individual performed all three pickups.

19. On June 12, 2025, investigators with IRS-CI became involved when J.B. informed agents about his interactions with HYCM up until that point.

20. On June 19, 2025, HYCM customer support notified J.B. via WhatsApp that he

should deposit an additional $111,348.00 in order to release his funds. J.B. notified IRS-CI about this interaction.

21.   On July 7, 2025, under the directions of law enforcement, J.B. was instructed to contact HYCM customer support via WhatsApp and schedule a gold pick up. HYCM customer support advised J.B. that the payment could be made with gold in amount of $111,348.00.

22.   On July 14, 2025, J.B. contacted HYCM and advised them that the gold was ready for pick up. On July 15, 2025, HYCM provided contact information for their offline staff named "Mike" with telephone number (469) 403-1727 and a picture of a one dollar bill with serial number L26075358F. The same day, J.B. was contacted by offline staff member identifying himself as Leo and scheduled a pick-up for July 16, 2025 at 08:30 a.m.

23.   On July 16, 2025, at approximately 08:25 a.m., J.B. received a WhatsApp message from HYCM support chat advising him that the offline agent would be arriving soon. Shortly after, an Asian male was observed approaching the residence to conduct the gold transaction. The subject entered J.B.'s residence and place a one-dollar bill on the table. After the subject left the residence, at approximately 8:30 a.m., the subject was placed under arrest by MEGSI in front of the residence.

24.   After the subject was placed under arrest, MEGSI confirmed that the dollar bill that the subject had placed on the table in J.B.'s residence had serial number L26075358F on it. This was the same dollar bill that had been sent in the previous WhatsApp message from the supposed HYCM representative.

25.   The subject stated he spoke English and that his identification was in his vehicle, of which he provided verbal consent to MEGSI to search. In his possession was a cellphone with a green colored case and black bookbag containing a gray iPad air. The cellphone and the iPad

were photographed and placed in a faraday bag.

26. MEGSI retrieved a New York state driver's license from the vehicle; ID: 966015192, JIN, SHENGHAN with address 3906 Main St., Apt 220, Flushing, NY 11354 and date of birth 04/11/1999 and another iPhone on the passenger side seat. The cell phone was placed in a faraday bag. JIN was transported to St. Clair County Jail for processing.

27. Upon further search, MEGSI discovered what appeared to be a red passport issued by Peoples Republic of China to JIN, SHENGHAN with passport number E53760377 and additional documents referencing prior seizures made by Oklahoma State Troopers, various financial documents and $602.00 in U.S. currency in different dominations. MEGSI is temporarily holding the inventory. The two cellphones and the iPad were transported to O'Fallon Police Department pending a seizure warrant.

28. After seeing JIN arrived for the July 16th pickup, J.B. observed that he was not the same individual that had performed the first three gold pickups.

29. As of July 16, 2025, J.B. has been unable to withdrawal any of the funds he deposited with "HYCM" despite numerous attempts.

30. In all, there is probable cause to believe that J.B. has lost more than $2.5 attributable to JIN and his co-conspirators.

31. Based on the foregoing, I believe there is probable cause to believe that JIN committed the offense set forth in Count 1 of this Complaint.

FURTHER AFFIANT SAYETH NAUGHT.

_____
*Sandy Lane*
SANDRA LANE

Special Agent  
United States Secret Service

_____
KATHLEEN HOWARD
Assistant United States Attorney

Subscribed and sworn to this  17   July, 2025, at East St. Louis, Illinois.

_____
HON. MARK A. BEATTY
United States Magistrate Judge
Southern District of Illinois